UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

ROBERT FELDMAN,

         Debtor.
----------------------------------------------------------X
DONALD GLASSMAN,

         Plaintiff,

  - against –

ROBERT FELDMAN,

         Defendant.

----------------------------------------------------------X

Chapter 13

Case No. 17-40152

Adv. Pro. No. 17-01050

**DONALD GLASSMAN'S SUPPLEMENTAL MEMORANDUM IN SUPORT OF MOTION FOR SANCTIONS AND CONTEMPT AGAINST THE DEBTOR FOR WILLFUL FAILURE TO COMPLY WITH THIS COURT'S ORDERS DATED JULY 14, 2017 AND NOVEMBER 6, 2017, AND FOR FRIVOLOUS, ABUSIVE, AND CONTEMPTUOUS CONDUCT BY THE DEBTOR IN CONNECTION WITH THE DEBTOR'S RULE 2004 EXAMINATION**

TO:   THE HONORABLE CARLA E. CRAIG,
       CHIEF UNITED STATES BANKRUPTCY JUDGE:

Donald Glassman ("Glassman"), an interested party and creditor in the above-captioned Chapter 13 proceeding, by and through his counsel, Ruta Soulios & Stratis LLP, respectfully submits this supplemental memorandum of law in support of his motion ("Sanctions Motion") for an order, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Rules 9011 and 7037 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C.A. §1927, and this Court's inherent powers:

1

(i) Dismissing the Debtor's Chapter 13 case for cause, including bad faith and contempt of this Court's orders, and barring the re-filing of Chapter 13 or Chapter 11 bankruptcy petition for one year;

(ii) sanctioning Debtor, including dismissing the Debtor's Chapter 13 case with prejudice, for: (a) willful and contumacious failure to comply with this Court's order dated November 6, 2017; (b) willful and contumacious failure to comply with this Court's Rule 2004 Order and the Subpoena issued pursuant thereto and (c) material dishonesty, and frivolous and gross misconduct before this Court, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841, and barring the re-filing for bankruptcy within one year;

(iii) sanctioning Debtor, for willful and contumacious failure to comply with (a) this Court's order dated November 6, 2017, (b) the Rule 2004 Order entered by the Court and Subpoena issued pursuant thereto, and (c) for material dishonesty, and frivolous and gross misconduct before this Court, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841;

(iv) sanctioning the Debtor for vexatious litigation in violation of 28 U.S.C.A. §1927 and awarding costs, including reasonable attorney's fees, in the amount of $61,841;

(v) finding and holding the Debtor in civil contempt of court for willful failure to comply with the orders of this Court and for engaging in a pattern of contemptuous and abusive conduct, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841;

In further support thereof, Glassman states the following:

1.　　On May 30, 2018, the Court conducted an evidentiary hearing in connection with Glassman's Sanctions Motion.

2.　　During the hearing Feldman offered no testimony that refuted or challenged any of the contentions in the Sanctions Motion which demonstrated overwhelming bases for dismissal with prejudice and sanctions, namely: (i) that Feldman willfully and contumaciously failed to comply with the Rule 2004 Order dated July17, 2017 (Exs. A and B to the Sanctions Motion); (ii) that Feldman willfully and contumaciously failed to comply with the Court's November 6, 2017 order (compelling compliance with the Rule 2004 Order and directing Feldman to verify, under penalties of perjury, that all responsive documents were produced) (Ex. D to the Sanctions Motion), (iii) that Feldman's bankruptcy schedules and statement of financial affairs, including those he amended, contained materially false statements and omissions; (iv) that Feldman behaved contemptuously during his Rule 2004 examination, disparaging, defaming and verbally abusing both Glassman and his counsel, Steven Soulios, and (v) that the Debtor's case was otherwise filed in bad faith.[1] Indeed, although given the opportunity, Feldman did not even offer direct testimony to counter the cross-examination by Glassman's counsel.

3.　　Consistent with the facts set forth in the Sanctions Motion, Feldman admitted that not only did his sworn bankruptcy schedules contain materially false statements and omissions, but upon indisputably learning of same, failed to correct and amend said schedules. For example, Feldman admitted that his schedules materially misstated his income for 2015; wherein he, under penalties of perjury, stated that he earned $0 from the practice of law, when in fact he earned

---

[1] See ¶¶7-54 in the Sanctions Motion as well as Glassman's Motion to Dismiss for bad faith pursuant to 11 U.S.C. §1307(c) (Doc. #20).

approximately $110,000. *See* redacted Transcript from the May 30, 2018 ("May 30 Tr.")[2], hearing attached hereto as Exhibit A, at pp. 36-38. Feldman also admitted that he also misstated his income for 2016, reporting $96,000 in his Statement of Financial Affairs, when in fact he earned approximately $116,000. May 30 Tr., p. 39. In the three months since Feldman allegedly first "learned" that his Statement of Financial Affairs materially misrepresented his income, Feldman did nothing to correct the false statements.

4. Feldman admitted at the May 30 hearing that he failed to comply with the Court's November 6, 2017 order, which directed him as follows: "The Requested Documents *must be accompanied by a statement under penalty of perjury signed by the Defendant which attests that the Defendant has turned over all documents within the Defendant's possession, custody and control that are responsive to the Subpoena." See* May 30 Tr., pp. 18-19.

5. Feldman admitted that he failed to comply with the November 6, 2017 order, which directed him to "produce all documents listed in the Subpoena for Rule 2004 Examination (the "Subpoena") dated September 26, 2017 (the "Requested Documents") on or before November 30, 2017" (See Ex. D to Sanctions Motion). Specifically, Feldman admitted that he failed to produce his American Express statements on or before November 30, 2017 (or even before his deposition on February 20, 2018). *See* May 30 Tr., pp. 30-32.

---

[2] Glassman submits that that testimony was in fact false. Indeed, Feldman's testimony at the hearing contradicted his sworn statements in his bankruptcy schedules wherein he averred "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct" and "I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571."
If Feldman's testimony at the May 30 evidentiary hearing was true, it means that his sworn statements in connection with his schedules were false.

6. Feldman also admitted during the evidentiary hearing that, during his February 20, 2018, deposition, he acknowledged for the first time that he had three to six other credit accounts for which he provided no statements, in violation of the November 6, 2017 order. May 30 Tr., 14-15, 33; *see also* Sanctions Motion, p. 9, ¶21.

7. Feldman also admitted that he failed to provide his PayPal statements even though they were specifically requested in the Rule 2004 Order and Subpoena. *See* May 30 Tr., pp. 20-22. Feldman also admitted that PayPal could be used much in the same way as a bank account. Funds were deposited into the Paypal account, and purchases could be made directly from the PayPal account i.e. without having to use a separate bank account. May 30 Tr., pp. 20-23.

8. Feldman admitted that his bankruptcy schedules also failed to report the fact (on Schedule I) that he was married at the time he filed his petition. May 30 Tr., p. 41. Feldman, on his Schedule I, was required to disclose the monthly income of his spouse (which bears materially on his financial needs and burdens, and entitlement to the extraordinary relief afforded by bankruptcy). Although Feldman testified at the May 30 hearing that his spouse Georgij Nikonov has "always been employed," and that he "contributes to the household," he listed $0 monthly income for Nikonov on his Schedule I. May 30 Tr., p. 44, 46.

9. Incredibly, Feldman testified at the May 30 hearing that during his cross-examination was the first time he had ever seen his Schedule I (which he previously swore under penalties of perjury that he had read and that the contents were true). May 30 Tr., p. 42.

10. Feldman testified at the May 30 hearing that he had never seen his amended Schedule I wherein he reduced his monthly income from $8,000 to $3,500, and followed that admission by saying that the amended disclosure of income was materially inaccurate. May 30 Tr., pp. 47-48.

11. Besides Glasssman's claim, Feldman's schedules reflect but two unsecured creditors, to wit, American Express in the amount of $10,699, and Sheila Buckmaster (the Debtor's sister) in the amount of $20,000. (See Doc. #1). Glassman established during Feldman's deposition, and again at the May 30 hearing, that Buckmaster's claim was spurious and meritless. Specifically, Feldman testified that his sister's claim arose from a loan made approximately 27 years ago (that arose from a gambling debt incurred while Feldman was intoxicated). May 30 Tr., p. 57; Sanctions Motion p. 7, footnote 2.

12. Feldman admitted that he filed the proof of claim in this case on behalf of his sister. May 30 Tr., p. 56. The proof of claim that Feldman filed falsely stated that the alleged loan obligation was incurred in 2015 (not 27 years ago as he testified at his deposition). *See* Buckmaster proof of claim, attached hereto as Exhibit B.

13. Feldman's schedules listed a non-exempt brokerage account at Charles Schwab in the amount of $60,000 (as of the petition date), which was more than sufficient to satisfy Feldman's pre-petition unsecured obligation to American Express and even the alleged loan from his sister.

14. During the May 30 hearing Feldman admitted that since this case was filed, he spent all of the funds in the Schwab account, depleting same. May 30 Tr., p. 24.

15. Feldman testified at his 341 meeting that, with respect to his only secured creditor, Nationstar, he was current on his mortgage at the time of the filing of his petition.

16. In his bankruptcy schedules, Feldman indicated that among his assets was a "right to receive portion of contingent fee in pending personal injury claim for representation of Plaintiff." See Doc#1, Schedule A/B, Part 5, No. 38. However, during his cross-examination at the May 30 hearing, Feldman stated there "***are at least two***" contingent fee cases that he is expecting to receive payment on. May 30 Tr., p. 53.

17. Lastly, although he accepts Bitcoin as payment for legal services (see Exhibit C), the Debtor neither produced documentation of his cryptocurrency assets, nor a sworn statement averring that he had no cryptocurrency assets at any time over the past six years.

## ARGUMENT

### I.

### FELDMAN'S CASE SHOULD BE DISMISSED FOR CAUSE (BAD FAITH)

Glassman submits that although his motion to dismiss filed at the outset of the case established cause to dismiss the petition for bad faith, Feldman's post-petition bad faith conduct documented in the Sanctions Motion and here, make the case of dismissal all the more compelling. "Bankruptcy is a privilege and not a right." *See In re Sochia*, 231 B.R. 158, 160 (Bankr. W.D.N.Y. 1999). In seeking protection under the Bankruptcy Code, a debtor "has the responsibility to inform [himself] of [his] duties" under the Code. *In re Ward*, 423 B.R. 22, 34 (Bankr. E.D.N.Y. 2010). When a "[d]ebtor has not complied with a number of [his] obligations imposed by the Bankruptcy Code, relief under § 1307(c) is appropriate." *Id.*; see also *Wenegieme v. Macco*, 580 B.R. 17, 21 (E.D.N.Y. 2018)(dismissing Chapter 13 with prejudice for one year where debtor engaged in serial filing in attempt to preserve his property without complying with duties such as making payments, providing mandatory disclosures, and appearing at meetings of creditors).

Pursuant to Section 1307(c) of the Bankruptcy Code, a court may dismiss a Chapter 13 case for cause, including where there is "unreasonable delay by the debtor that is prejudicial to creditors." 11 U.S.C. § 1307(c). While Section 1307(c) identifies several circumstances warranting dismissal, that list is not exhaustive. "Although 11 U.S.C. § 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can also dismiss the petition ... under § 1307(c) if the debtor files his petition in bad faith." *In re Eatman*, 182 B.R. 386, 392

(Bankr.S.D.N.Y.1995) (citations omitted); *see also Plagakis v. Gelberg* (In re Plagakis), 2004 WL 203090 at *4 (E.D.N.Y. Jan. 27, 2004) (bad faith filing constitutes "cause" for dismissal).

Courts have found bad faith in Chapter 13 cases in the following circumstances: 1) the debtor has few or no unsecured creditors; 2) the debtor has previously filed for bankruptcy; 3) the debtor's pre-petition conduct was improper; 4) the debtor's petition allows him or her to evade court orders; 5) the debtor has few debts to non-moving creditors; 6) the petition was filed on the eve of foreclosure; 7) the foreclosed property was the sole or major asset of the debtor; 8) no possibility exists for reorganization; 9) the debtor's income is insufficient to operate; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute; and 12) the debtor filed solely to obtain an automatic stay. *Plagakis v. Gelberg* (*In re Plagakis*), 2004 WL 203090 at *4, citing *In re Patricia Jean Powers*, 135 B.R. 980, 981 (Bankr.C.D.Cal.1991).

Many of those factors are present here, including the following: 1) Feldman has but one legitimate undisputed unsecured creditor, American Express, and was in a position to easily satisfy that obligation from the $60,000 he held pre-petition in the Charles Schwab account; 3) Feldman's pre-petition conduct, outlined in Glassman's state court action with claims of malpractice, defamation and fraud headed to trial, was improper; 5) Feldman has few debts to non-moving creditors; 6) the petition was filed on the eve of trial of Glassman's claims for legal malpractice, defamation, IIED, breach of Judiciary Law §487 (criminal deceit by an attorney-at-law), and other claims; 10) there is no pressure from non-moving creditors; 11) reorganization essentially involves the resolution of a two-party dispute i.e. between Feldman and Glassman; and 12) Feldman filed solely to obtain the automatic stay.

In addition to the factors enunciated in *Plagakis* bankruptcy courts have looked to a variety of other factors when considering bad faith. Those factors include: whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the debtor has abused the purpose of the bankruptcy code. *In re Lin*, 499 B.R. 430, 436-38 (Bankr. S.D.N.Y. 2013)(dismissing Chapter 13 for cause for "lack of transparency," because the debtor "has not been forthcoming with the court about her assets" and because the debtor has caused unreasonable delay.) citing *In re Klevorn*, 181 B.R. 8, 11 (Bankr.N.D.N.Y.1995). Courts have routinely held that dishonesty of a debtor is an indication of bad faith conduct and warrants dismissal. Id. citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Leavitt*, 171 F.3d 1219 (9th Cir.1999) (holding bad faith of dishonest debtor, who failed to disclose assets, warranted dismissal); *In re Powers*, 135 B.R. 980, 992 (Bankr.C.D.Cal.1991) (noting "lack of an honest and genuine desire to use the statutory process to effect a plan of reorganization" is an indicia of bad faith).

Here, and in the Sanctions Motion, Glassman has conclusively established Feldman's material dishonesty – both in his schedules and statements of financial affairs, and in his testimony during his 2004 examination and at the May 30 hearing. He repeatedly testified under penalties of perjury that he never saw documents that he in fact signed under penalties of perjury swearing that he in fact read and understood the contents thereof (and that the same were true). Feldman's schedules contained material omissions about his income, his assets (initially failing to disclose that the real estate he owns was in fact also owned by a person name Sergio Pavon), the fact the he is married and that his husband is employed and contributes to his household expenses. It is

9

also reasonable to conclude that Feldman fabricated the alleged debt to his sister in order to create the appearance of more than the one unsecured claim he identified in American Express.

Feldman, a lawyer admitted to the New York Bar since 1981, repeatedly tried to blame his attorney for the innumerable false statements and material omissions in his schedules and statement of financial affairs. *See* Sanctions Motion, pp. 10-13. Such efforts by Feldman were disingenuous and in bad faith and should not be countenanced by this honorable Court. "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Gobindram v. Bank of India*, 538 B.R. 629, 638 (E.D.N.Y. 2015) quoting *In re: Maletta*, 159 B.R. at 112 (quoting *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). Furthermore, purported reliance on the advice of counsel cannot excuse a false representation in a petition when the error should be plainly obvious to the debtor. *Id.*, citing *In re Dubrowsky*, 244 B.R. at 573 ("An explanation by the debtor that he acted on advice of counsel, who in turn was fully aware of all the relevant facts, generally rebuts an inference of fraud. However, even the advice of counsel is not a defense to a charge of making a false oath or account when it is transparently plain that the property should be scheduled.") (citing *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974); *In re Kelly*, 135 B.R. at 462 ("The defense of reliance on counsel is not available when it is transparently plain that the advice is improper.")). Feldman and Feldman alone was and is responsible for the material misstatements and omissions in the schedules that he swore to be truthful and accurate (and the failure to cure them for many months - even to this day).

1. **The Sanctions Motion Has Demonstrated Feldman's Willful and Contumacious Disregard of The Bankruptcy Rules and This Court's Orders Dated July 14, 2017 and November 6, 2017.**

Except to say that it is indisputable that Feldman willfully failed to comply with and obey two very clear and unambiguous orders of this Court, Glassman will not belabor the points made in the Sanctions Motion regarding Feldman's post-petition bad faith conduct. *See* Sanctions Motion, pp. 25-34.

2. **The Sanctions Motion Has Documented Feldman's Contemptuous Conduct Toward Glassman and Soulios During His Rule 2004 Examination on February 20, 2018.**

Glassman respectfully refers the Court to pages 20-25 of the Sanctions Motion for the facts demonstrating Feldman's abusive and contemptuous conduct during his Rule 2004 examination.

Glassman respectfully submits that the Court's inherent power to sanction Feldman, including dismissal of his Chapter 13 petition with prejudice, is separate and independent of, and in addition to, the statutory bases under 11 U.S.C. 1307(c), and such relief clearly warranted here.

## II.

### FELDMAN'S CASE SHOULD BE DISMISSED WITH PREJUDICE

On November 6, 2017, the Court entered a clear and unambiguous order as follows:

1. Robert Feldman shall produce all documents listed in the Subpoena for Rule 2004 Examination (the "Subpoena") dated September 26, 2017 (the "Requested Documents") on or before November 30, 2017;" and

2. *The Requested Documents **must be accompanied by a statement under penalty of perjury signed by the Defendant which attests that the Defendant has turned over all documents within the Defendant's possession, custody and control that are responsive to the Subpoena.** The term "control" shall also include the ability to cause third parties to produce the Requested Documents.*

3. The Defendant shall appear for a deposition at 10:00 a.m. on December 14, 2017, at the law offices of Ruta Soulios & Stratis LLP.

> And it is further **ORDERED**, *that failure to adhere to any of these deadlines may result in sanctions, including preclusion, dismissal of claims, dismissal of the Bankruptcy case and dismissal of this adversary proceeding*. [emphasis added]

It is undisputed from the record in this case that Feldman knowingly and willfully failed to comply with the Court's directives regarding the production of documents and the issuance of a sworn statement confirming compliance with same. In *In re Casse*, 198 F.3d 327 (2d. Cir. 1999) the Second Circuit, following the Fourth Circuit's decision in *Colonial Auto Ctr. v. Tomlin* (*In re Tomlin*), 105 F.3d 933, 940 (4th Cir.1997), made it clear that in addition to dismissing a bankruptcy case for cause, i.e for bad faith, a bankruptcy court, under 11 U.S.C. §§105 and 349, may dismiss a case with prejudice and preclude subsequent re-filings by the debtor. "To bar future filings, an order of dismissal must be 'with prejudice'; and bankruptcy courts look to §§ 105(a) and 349(a) for their authority to impose that sanction. The distinction between dismissals 'for cause' and 'with prejudice' is noted in *In re Martin–Trigona*, 35 B.R. 596, 601 (Bankr. S.D.N.Y.1983): 'Where there exists a multiplicity of factors which would be sufficient to meet the cause requirement of §1307, the cumulative effect will be considered in determining whether there exists sufficient cause for a dismissal with prejudice pursuant to §349(a).'" *In re Casse,* 105 F.3d at 935.

After describing Section 105 as:

> "an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction.... Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105 , are able to police their dockets and afford appropriate relief." *In re Casse,* 105 F.3d at 936 (citing 2 Collier on Bankruptcy (15th ed.1999) at 105–5-7,

the court then held that "§105 empowers this Court to enjoin future filings to prevent abuse of the bankruptcy process." *Id.* The Second Circuit concluded its decision in *In re Casse* by stating: "We take this opportunity to ally ourselves with the Fourth Circuit and the great majority of lower courts

12

which derive from §§ 105(a) and 349(a) of the Code a bankruptcy court's power, in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days. We join those courts in concluding that § 109(g) does not impose a temporal limitation upon those other sections. *Id.* at 339. *See also, In re Bridge To Life, Inc.,* 2006 WL 1329778, *5 (E.D.N.Y. 2006) ("We join those courts in concluding that §109(g) does not impose a temporal limitation upon those other sections.").

Most recently, the United States Bankruptcy Court for the Eastern District of New York, in *Wenegieme v. Macco*, 580 B.R. 17, 21 (E.D.N.Y. 2018), after finding that the debtor filed a Chapter 13 petition in bad faith, dismissed "the bankruptcy proceeding in its entirety with prejudice to re-filing for one year from entry of the Dismissal Order." Judge Grossman's decision was upheld on appeal by the Eastern District of New York. In affirming this Court's decision, the Eastern District, relying on *Casse*, stated: *"*it is well-established that courts have discretion to bar re-filing of a bankruptcy action for periods of a year or longer, in particular in cases of serial filings…" (citing *In re Casse*, 198 F.3d 327, 339), as well as noting that in order to "deal with serial filers and their bad faith abuse of the bankruptcy process," 11 U.S.C. §§105(a) and 349(a) authorize bankruptcy courts, "in an appropriate case, to prohibit a serial filer from filing petitions for periods of time exceeding 180 days,'" citing *In re Tornheim*, 239 B.R. at 687 (dismissing a bankruptcy case with prejudice for two years) and *In re Montalvo*, 416 B.R. 381, 388–89 (Bankr. E.D.N.Y. 2009) (dismissing a case with prejudice pursuant to 11 U.S.C. §349(a) for one year after concluding that debtor's conduct amounted to "part of a scheme to delay, hinder, and defraud the creditor")).

For the foregoing reasons, Glassman respectfully submits that in light of the bad faith and contemptuous conduct of Feldman, both pre-petition and during the pendency of this case, an order

pursuant to 11 U.S.C. §§105(a) and 349(a) dismissing this case with prejudice and precluding a re-filing within one year is appropriate.

### III.

### GLASSMAN SHOULD BE AWARDED REIMBURSEMENT OF ATTORNEY'S FEES AND COSTS INCURRED AS A RESULT OF FELDMAN'S BAD-FAITH, DECEITFUL AND CONTEMPTUOUS CONDUCT

As set forth in the Sanctions Motion, there are several bases upon which the Court may sanction Feldman and enter an award of attorneys' fees and costs, including pursuant to (i) its inherent power, (ii) 28 U.S.C.A. §1927, (iii) Bankruptcy Rule 7037, and (iv) for civil contempt. *See* Sanctions Motion, pp. 25-34. The case of *In re Saint Vincent's Catholic Medical Centers of New York*, 2014 WL 3545581 (S.D.N.Y. 2014) is applicable to the facts and circumstances here and instructive. In *Saint Vincent's* the district court sanctioned a creditor for violating the discharge injunction, which required the Liquidating Trustee to litigate in state court to enjoin the violations of the discharge injunction. The bankruptcy court imposed $83,515.00 in sanctions on the creditor 28 U.S.C. §1927. See *Saint Vincent's Catholic Medical Centers of New York*, 2014 WL 3545581, \*5, as follows: (i) $2,511.00 incurred in communications with Menkes (i.e. the creditor) regarding the State Court Action, (ii) $17,929.00 incurred in defending against the State Court Action, and (iii) $63,075.00 in preparing and prosecuting the motion to enforce the automatic stay. *Id.*, at \*5. With the exception of $400, the district court affirmed the bankruptcy court's sanctions award. 2014 WL 3545581, \*13. Essentially, both the bankruptcy court and the district court concluded that the Liquidating Trustee was entitled to recover for all legal fees and expenses that were proximately caused by and incurred as a result of the contemptuous conduct.

As the court noted in *In re Spectee Group, Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995) "A Court has inherent authority to supervise and control its own proceedings, and to require the

payment of the other party's attorney's fees by one who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986)). The *Spectee Group* court noted that the power to sanction "is not limited to bad faith filings; the Court can award sanctions either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. "'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Spectee Group, Inc.*, 185 B.R. at 155, quoting *Oliveri v. Thompson*, 803 F.2d at 1272.

The same standards of compensation and reimbursement apply whether sanctions are awarded under Fed.R.Civ.P. 11 (and hence under Fed.R.Bankr.P. 9011 ), 28 U.S.C. § 1927 or the Court's the inherent power. *Spectee Group, Inc.*, 185 B.R. at 160, citing *PaineWebber, Inc. v. Can Am Financial Group, Ltd.*, 121 F.R.D. 324, 334 (N.D.Ill.1988), aff'd without op., 885 F.2d 873 (7th Cir.1989). "The injured party can recover those 'attorney's fees incurred attributable to investigating, researching and fighting' the debtor's meritless petition as well as the fees incurred 'to research, prepare and prosecute' its sanctions motion." Id., quoting *PaineWebber* at 334–35. The party seeking the sanction must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary. *Id.*, citing *Wood v. Brosse, U.S.A., Inc.*, 149 F.R.D. 44, 52 (S.D.N.Y.1993); *see Caisse Nationale de Credit Agricole– CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259,266 (2d Cir.1994). The amount to be awarded is committed to the Court's discretion. *Id.*

As set forth in the redacted statements from the law firm of Ruta Soulios & Stratis LLP ("RSS") attached hereto as Exhibit D, Glassman seeks an order awarding him reimbursement of $59,927 in attorneys' fees plus $1,914 for a total amount of $61,841. Although under *Spectee*

15

*Group,* Glassman could reasonably request reimbursement of fees associated with the initial motion to dismiss for a bad faith filing, he only seeks reimbursement for services related to the following matters and subjects: (i) Feldman's failure to comply with the Rule 2004 Order entered on July 17, 2017 and Glassman's efforts to compel compliance therewith, including the drafting of a letter motion to the Court on October 10, 2017 requesting, *inter alia*, leave to file a motion for sanctions, (ii) attending the hearing before the Court on November 6, 2017 in connection with Feldman's failure to comply with the Rule 2004 Order, (iii) Glassman's efforts to secure compliance from Feldman regarding the November 6, 2017 order and directives therein, (iv) preparing for and conducting the Rule 2004 examination, which, due to the Debtor's material non-compliance with the Rule 2004 and November 6, 2017 orders, became more about establishing the contemptuous and sanctionable conduct than an investigation into the financial affairs of the Debtor, (v) preparing and filing the Sanctions Motion, (vi) preparing for and attending the evidentiary hearing on the Sanctions Motion, and (vii) preparing this supplemental memorandum at the direction of the Court.

Glassman submits that the fees of RSS, and the rate of $495/hour for Steven Soulios, who has close to thirty years of experience as a bankruptcy litigator, were reasonable and necessary in light of the obstruction and contemptuous conduct of Feldman.

1. **Feldman Has the Ability to Pay**

In addition to his testimony wherein Feldman stated that through his law practice he typically earns in excess of $100,000 annually[3], Feldman acknowledged that he is entitled to receive and waiting upon payment of approximately $30,000 for contingent fee matter that he was engaged upon. *See* May 30 Tr., pp. 47, 54. Glassman submits that under the Court's broad equity

---

[3] Feldman's 2016 tax return showed $116,000 in income for 2016.

16

power found in 11 U.S.C. §105 to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction, this Court may, and in this case ought, attach the proceeds from the aforesaid contingent fee that Feldman indicated is forthcoming, and to direct that said funds be held in escrow and used to partially satisfy Glassman's sanctions award. Clearly, the contingent fee proceeds is property of the estate under 11 U.S.C. §541.

## CONCLUSION

For all of the foregoing reasons, Glassman respectfully respects entry of an order, pursuant to Rule 37 of the Federal Rules of Civil Procedure, Rule 7037 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C.A. §1927, and this Court's inherent powers:

(vi) Dismissing the Debtor's Chapter 13 case for cause, including bad faith and contempt of this Court's orders, and barring the re-filing of Chapter 13 or Chapter 11 bankruptcy petition for one year;

(vii) sanctioning Debtor, including dismissing the Debtor's Chapter 13 case with prejudice, for: (a) willful and contumacious failure to comply with this Court's order dated November 6, 2017; (b) willful and contumacious failure to comply with this Court's Rule 2004 Order and the Subpoena issued pursuant thereto and (c) material dishonesty, and frivolous and gross misconduct before this Court, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841, and barring the re-filing for bankruptcy within one year;

(viii) sanctioning Debtor, for willful and contumacious failure to comply with (a) this Court's order dated November 6, 2017, (b) the Rule 2004 Order entered by the Court and Subpoena issued pursuant thereto, and (c) for material dishonesty, and

17

        frivolous and gross misconduct before this Court, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841;

(ix)    sanctioning the Debtor for vexatious litigation in violation of 28 U.S.C.A. §1927 and awarding costs, including reasonable attorney's fees, in the amount of $61,841;

(x)    finding and holding the Debtor in civil contempt of court for willful failure to comply with the orders of this Court and for engaging in a pattern of contemptuous and abusive conduct, and awarding reimbursement of Glassman's reasonable attorney's fees and litigation expenses in the amount of $61,841;

Dated: New York, New York
       June 15, 2018

                Respectfully submitted,

                RUTA SOULIOS & STRATIS LLP
                Attorneys for Donald Glassman

                By:/s/ Steven A. Soulios
                Steven A. Soulios, Esq. (SAS-4832)
                211 East 43rd Street, 24th Floor
                New York, New York 10017
                (212) 997-4500