UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Chapter 13

ROBERT FELDMAN,                                                 Case No. 17-40152-cec
                          Debtor.
-------------------------------------------------------------x
DONALD GLASSMAN
                                                                Adv. Pro. No. 17-01050-cec
                          Plaintiff,

v.

ROBERT FELDMAN,

                          Defendant.
-------------------------------------------------------------x


DECISION DISMISSING CASE WITH PREJUDICE AND GRANTING IN PART
PLAINTIFF'S MOTION FOR SANCTIONS


APPEARANCES

Steven A. Soulios, Esq.                 Steven D. Hamburg
Ruta, Suoilos, & Stratis LLP            2736 Independence Avenue
370 Lexington Avenue                    Suite 1H
24th  Floor                             Bronx, NY 10463
New York, NY 10017                      Counsel for the Debtor/Defendant
Counsel for the Plaintiff

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of Donald Glassman ("Glassman"), a creditor of the debtor, Robert Feldman (the "Debtor"), to dismiss this Chapter 13 case with prejudice, pursuant to 11 U.S.C. § 1307, and to sanction the Debtor pursuant to 11 U.S.C § 105, 28 U.S.C. § 1927, and Federal Rule of Bankruptcy Procedure 7037.

The Debtor is a lawyer, and Glassman, his former client, commenced an action in state court against him asserting various claims, including legal malpractice and defamation. The automatic stay has been modified to permit this action to proceed to judgment, but not to execution. (Lift Stay Order, ECF No. 78).[1]

Glassman seeks an order dismissing the bankruptcy with prejudice because, Glassman asserts, the Debtor filed the bankruptcy petition, and prosecuted this case, in bad faith. Glassman also seeks sanctions based upon the Debtor's failure to comply with two discovery orders entered in this case. For the following reasons, the motion to dismiss is granted with prejudice, and the motion for sanctions is granted in part.[2]

## JURISDICTION

This Court has jurisdiction of this core proceeding under 28 U.S.C. § 157(b)(2)(A) and § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by Order dated December 5, 2012.

---

[1] Unless otherwise indicated, all references to "ECF No." are to documents identified by docket entry, filed in Case No. 17-40152-CEC.

[2] On June 20, 2018, Debtor's attorney, Steven Hamburg, was suspended from the practice of law in New York for eighteen months, commencing on that date, and on June 22, 2018, the United States District Court for the Eastern District of New York entered an order, effective 24 days after the date of service upon Hamburg, suspending him from practice in this district. In re Hamburg, No. 1:18-mc-01710 (AMD) (E.D.N.Y. June 22, 2018), ECF No. 2. Hamburg's suspension is for reasons unrelated to his representation of the Debtor. Id., ECF No. 1. Although the trial of this matter and the post-trial briefing concluded before the effective date of Hamburg's suspension from practice in this district, an order was entered on August 20, 2018 staying this case and adversary proceeding, and directing any replacement counsel for the Debtor to file a notice of appearance. (Order Staying Case, ECF No. 90.) On October 15, 2018, Barry R. Levine made a motion to appear pro hac vice on behalf of the Debtor, which was granted. (Order Granting Mot. to Appear, ECF No. 101.)

<u>BACKGROUND</u>

**A. <u>Procedural History</u>**

This Chapter 13 case was commenced on January 13, 2017. On March 9, 2017, Glassman, acting <u>pro se</u>, filed a "notice of motion to dismiss the petition for cause pursuant to 11 U.S.C. § 1307(c)." (<u>See</u> Mot. to Dismiss, ECF No. 20.) There, Glassman alleged that "the Petition was not filed to obtain protection from the Debtor's creditors, but rather for the sole, improper purpose of securing an automatic stay of [Glassman's] civil actions for legal malpractice, defamation, and several other causes of action against the Debtor . . . which had been scheduled to go to trial on January 18, 2017." (Mot. to Dismiss 1, ECF No. 20).

On February 18, 2017, Glassman filed a claim in this bankruptcy case based upon the claims asserted in the state court action, which was amended on April 14, 2017 to seek damages of $31,030,000. (<u>See</u> Claim No. 2-2.) On April 17, 2017, Glassman, <u>pro se</u>, commenced an adversary proceeding against the Debtor, seeking a determination that his claim is nondischargeable under 11 U.S.C. § 523(a)(2) and (4). (Compl. 1, ECF No. 32.) Glassman then retained an attorney, who filed a notice of appearance on May 25, 2017, and who appeared on behalf of Glassman in this case and in the adversary proceeding thereafter. (Notice of Appearance, ECF No. 39.) Glassman filed an application to conduct a Rule 2004 examination of the Debtor, which was granted on July 14, 2017 (the "2004 Order"). (2004 Order, ECF No. 44.) By Stipulation and Order entered on August 11, 2017, the parties were to complete the Rule 2004 examination on or before September 28, 2017. (Sched. Order, ECF No. 47.)

On October 10, 2017, Glassman informed the Court that the Debtor failed to comply with the 2004 Order. (<u>See</u> Ltr., ECF No. 50.) On November 6, 2017, after holding a conference on the matter, the Court issued an order providing as follows:

[T]he parties hereto shall comply with the following schedule . . .

1. [Debtor] shall produce all documents listed in the Subpoena for Rule 2004 Examination (the "Subpoena") dated September 26, 2017 (the "Requested Documents") on or before November 30, 2017.

2. The Requested Documents must be accompanied by a statement under penalty of perjury signed by the [Debtor] which attests that the [Debtor] has turned over all documents within the [Debtor]'s possession, custody and control that are responsive to the Subpoena. The term "control" shall also include the ability to cause third parties to produce the Requested Documents.

3. The [Debtor] shall appear for a deposition at 10:00 a.m. on December 14, 2017, at the law offices of Ruta Soulios & Stratis LLP

4. The parties shall file a joint pre-trial order on or before January 26, 2018

5. The parties shall appear for trial on February 1, 2018, at 10:30 a.m. in Courtroom 3529, United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza east, Brooklyn, NY 11201;

and it is further

**ORDERED**, that failure to adhere to any of these deadlines may result in sanctions, including preclusion, dismissal of claims, dismissal of the Bankruptcy case and dismissal of [the] adversary proceeding.

(Order, Adv. Pro. No. 17-01050-CEC, ECF No. 8 (the "November 6 Order").)

On January 27, 2018, Glassman filed a letter on the docket captioned "Joint Request to modify scheduling order and adjourn trial to allow for completion of di[s]covery." (Ltr., ECF No. 53 (the "Jan. 27, 2018 Letter").) The Jan. 27, 2018 Letter detailed the Debtor's failure to comply with the November 6 Order, and requested that the Court modify the November 6 Order to allow the deposition to be completed on or before February 9, 2018. (Jan. 27, 2018 Ltr., ECF No. 53.) The Court adjourned the trial to May 30, 2018, and directed the parties file a joint pre-trial order by May 23, 2018. (Order Adj. Trial, ECF No. 56.) Then, on May 9, 2018, Glassman,

alleging that the Debtor still refused to comply with the 2004 Order, the Subpoena for Rule 2004 Examination dated September 26, 2017 (the "Subpoena"), and the November 6 Order, filed a motion to sanction the Debtor (the "Sanctions Motion"), seeking dismissal of this bankruptcy case with prejudice as well as monetary sanctions.  (Sanctions Mot., ECF No. 60.)  On May 22, 2018, Glassman requested a stay of trial pending resolution of the Sanctions Motion, which the Court denied.  (See Order Denying Stay, ECF No. 63.)

On May 23, 2018, the date joint pre-trial order was due, the parties requested, and the Court granted, an extension of time for the parties to submit a joint pre-trial order until May 25, 2018.  (Endorsed Order, Adv. Pro. No. 17-01050-CEC, ECF No. 15.)  On May 25, 2018, the parties again requested, and the Court granted, an extension of time for the parties to submit a joint pre-trial order until May 29, 2018 at 5:00 p.m.  (Endorsed Order, ECF No. 68.)  The parties did not submit a pre-trial order.  The May 30, 2018 trial proceeded nevertheless, focusing on whether the Court should grant Glassman's motion to dismiss this bankruptcy case with prejudice and whether the Court should sanction the Debtor.  (See Trial Tr. (hereinafter "Tr."), ECF No. 117.)[3]

### B.  Trial

At the trial, the Court heard testimony from the Debtor and from Glassman.  Throughout the trial, the Debtor demonstrated a dismissive attitude toward his disclosure obligations under the 2004 Order, the Subpoena, and the November 6 Order, and toward his obligations to provide truthful and complete disclosure in his Schedules and Statements of Financial Affairs in this bankruptcy case.  For example,

---

[3] By Order dated February 11, 2019, approximately one page of the May 30, 2018 trial transcript was stricken from the record and sealed.  (Order to Show Cause, ECF No. 115.)  All references to "Tr." are to the redacted trial transcript.  (ECF No. 117.)

> Q.  Did you make an effort to get your statements from Bank of America after the subpoena was served upon you?
>
> A.  I did not because I never used [that] account.

(Tr. 15:25−16:2.)

> Q.  Is it your testimony that you don't have the ability to go into your PayPal account and get a history of your transactions that you've made on that account?
>
> A.  I can, absolutely. All I do is turn on my – look at my phone.
>
> Q.  But yet you did not do that in response to the subpoena, correct?
>
> A.  I did not….

(Tr. 20:22−21:4.)  The Debtor made no effort to conceal his contempt for Glassman and Glassman's attorney.  (See, e.g., Tr. 33:15−21 ("Talentless was the exact word I used, and I was being kind…I think 'talentless' is the perfect description [of your skills as a lawyer]."), Tr. 30:1−8 ("All my credit cards, all my American Express that I had in my possession I gave to my lawyer.  So, yes, I blame you [Glassman's attorney] for not getting them from [my attorney].").)

Each time he was confronted with false statements in his Schedules and Statement of Financial Affairs, or with information which was not disclosed, the Debtor testified that it was a mistakeand his attorney's fault.  For example,

> Q.  Isn't it true that the statement of financial affairs that you filed in this case declares your income for 2015 to be zero?
>
> A.  That was totally incorrect mistake, and I never told anybody that.  My lawyer said it was his mistake.  I've made money every single year of my life.  I never made zero.

(Tr. 36:23−37:2.)

> Q.  On your schedules you showed that you made [$]96,000, when in fact your tax returns show that you made about [$]116,000, correct?
>
> A.  …I could not tell you how much I made last year, how much I made in 2017.  If you told me that it's between 96 and 120, I said, that sounds right.  That's -- under penalties of perjury, that is as far as my knowledge of how much I made goes.  I don't keep exact track in my mind of my exact income.  It's all available in my tax returns.  you have my tax returns.  I apologize for my lawyer, or maybe it's my fault for not making sure that [the] official court filing was amended.

(Tr. 39:6–17.)  The Debtor further testified that,

> [e]very time I come to Court, every time I talk to him[, my attorney, as]
> recently as yesterday, when he told me to come here, I said, what should I
> bring?  What do you need?  What documents?  He says, nothing…. I say
> that every time I come here, Judge, every time I speak with him, what do
> you need?  What does Mr. Macco need?  What does the Court need?  He
> says, just show up, and that's under the penalty of perjury.

(Tr. 74:23–75:19.)

The Debtor acknowledged that his Schedules and Statements of Financial Affairs

contained numerous errors, though he declared, in the petition, under penalty of perjury, that they

were true and correct.  At trial, the Debtor testified,

| | |
|---|---|
| THE COURT: | So you didn't read your schedules before you signed? |
| THE [DEBTOR]: | Apparently not carefully enough, Your Honor, because the thing with zero, the thing where it says, I'm not married, I take blame and responsibility for not reading it carefully enough, Your Honor. |
| THE COURT: | Before signing under penalty of perjury? |
| THE [DEBTOR]: | That's correct. I totally trust -- trusted my attorney. |
| THE COURT: | …as an attorney, don't you think you have an additional responsibility over and above what a nonattorney would have to ensure that your statement under penalty of perjury is in fact correct? |
| THE [DEBTOR]: | I absolutely do… I stand chastised and corrected. And it wasn't willful, and it wasn't intentional, Your Honor. I would say it was careless. |

(Tr. 59:22–60:20.)

The Debtor's bankruptcy filings contained numerous material errors.  The Debtor's

Statement of Financial Affairs incorrectly stated that in 2015 he earned $0 from the practice of

law (Pet. 37, ECF No. 1), but he testified that he actually earned approximately $110,000 (Tr.

36:23–38:2); the Debtor stated his income for 2016, in his Statement of Financial Affairs, as

$96,000 (Pet. 37, ECF No. 1), but he testified that he actually earned about $116,000 (Tr.

48:4–7); the Debtor is married, and his spouse is employed and contributes to the household (Tr.

7

44:21−46:25), but he did not include any information about his spouse in his Schedule I (Pet. 28, ECF No. 1); the Debtor filed an amended Schedule I amending his monthly income from $8,000 to $3,850 (Am. Sched. 15, ECF No. 30), but the Debtor testified at trial that the $3,850 monthly income figure is inaccurate (Tr. 49:1−5); the Debtor's amended Schedule I also states that his spouse is unemployed (Am. Sched. 15, ECF No. 30), but the Debtor testified that his spouse has always been employed (Tr. 44:25); the Debtor's Schedule A/B lists, as an asset, the right to receive a portion of a contingent fee in a pending case, but the Debtor testified that there are at least two cases in which he is expecting to receive a contingent fee.  (Compare Am. Sched. 8, ECF No. 30, with Tr. 52:24−54:25.)

In addition to filing inaccurate schedules and statements in this case, the Debtor also apparently filed a claim on behalf of his sister, Sheila Buckmaster, which is one of the few claims in this case other than Glassman's claim.[4]  The claims register shows a claim of Ms. Buckmaster in the amount of $20,000.  The Debtor testified,

A.    I filed it. She never asked for it. So in other words, I believe the court sent her documents, and she chose not to ask for it.

Q.    Isn't it true that she, in fact, filed a proof of claim in this case?

A.    I wrote her name that I owed her 20,000 dollars because it was the truth.  Then the court or the trustee sent her documents.  She called me.  She said, I'm not going to get involved in trying to get that 20 grand out of you in bankruptcy court. We're very close."

(Tr. 56:15−24.)

Q.    I'm showing you what has been marked as Claim 5-1, which was filed on May 10th, 2017. Can you describe what that document is?

A.    Yes.

---

[4] The claims register shows the following claims: Claim No. 1 filed by American Express Centurion Bank in the amount of $10,992.69; Claim No. 2 filed by Glassman in the amount $31,030,000.00, contingent upon the outcome of a state law civil action; Claim No. 3, a mortgage claim filed by Wells Fargo Bank, N.A. in the amount of $384,835.66 showing the mortgage to be substantially current, with mortgage arrears of $1,872.52; Claim No. 4 filed by Ashley Funding Services, LLC in the amount of $6.94; and Claim No. 5 on behalf of Sheila Buckmaster in the amount of $20,000.00.

Q. What is it?

A. My handwriting. It is an official form 4010, proof of claim, apparently - - I believe my lawyer typed in Sheila Buckmaster and I handwrote her phone number, her email, but my lawyer did all the typing.

Q. Who signed the signature?

A. What signature?

Q. Right there on the third page, is that your signature?

A. Oh, no. she - - that's obviously in her signature, yes. That's not my signature.

Q. So she signed this?

A. I – I – I – absent fraud, I'm sure she did.

(Tr. 58:9–24.) The Debtor's denial that he signed his sister's name on the proof of claim lacks credibility. But, whether or not he did sign his sister's name, the Debtor's conduct reflects an effort to manipulate the bankruptcy process to make it appear that this case is more than a two-party dispute.

The record at trial also demonstrates that the Debtor failed to comply with his discovery obligations, including his obligations under the November 6 Order. Specifically, the Debtor failed to produce his credit card, PayPal, and Venmo statements, and failed to provide a statement signed under penalty of perjury attesting that the Debtor has turned over all responsive documents within his possession, custody, and control. (Tr. 14–24.)

## DISCUSSION

Based upon the Debtor's conduct, Glassman asserts that the Debtor filed and prosecuted this bankruptcy case in bad faith and seeks dismissal of the case for cause pursuant to 11 U.S.C § 1307(c). (Suppl. Mem. in Supp. 7, Adv. Pro. No. 17-01050-CEC, ECF No. 22.) Glassman argues that the Debtor's dishonesty, both in his schedules and testimony, and his failure to comply with his disclosure obligations under the November 6 Order, demonstrates bad faith warranting dismissal. (Id. at 9.) Glassman also argues that the Debtor's bad faith in

commencing this bankruptcy case is evidenced by the following facts: (1) other than Glassman, whose claim he disputes, the Debtor has few creditors, whose claims he could have easily satisfied pre-petition; (2) the Debtor filed this petition on the eve of trial in the state court action by Glassman against the Debtor, apparently to prevent that trial from going forward; and (3) any reorganization essentially would consist of the resolution of Glassman's disputed claim against the Debtor.  (Id. at 8.)  Glassman seeks dismissal of this case with prejudice to re-filing for one year pursuant to 11 U.S.C. § 105(a).  (Id. at 13−14.)

The Debtor asserts that he did not act in bad faith.  (Aff. in Opp'n ¶ 10, ECF No. 64).


A.  **Dismissal for Cause**

It is well established that a case may be dismissed due to a debtor's bad faith.  In re Ciarcia, 578 B.R. 495, 499 (Bankr. D. Conn. 2017).  "In determining whether a debtor has pursued actions in a case that would warrant conversion or dismissal for lack of good faith, a court must review the totality of the circumstances."  Id. at 499−500.  "The totality of the circumstances should take into consideration whether the debtor has abused the 'provision, purpose or spirit' of the Bankruptcy Code and whether the filing is 'fundamentally fair' to creditors."  In re Armstrong, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009) (quoting In re Love, 957 F.2d 1350, 1357 (7th Cir. 1992)).

1.  *Misstatements and Omissions in Court Filings*

Among the factors that are considered in determining whether a debtor has failed to file or pursue a case in good faith are "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether the

debtor has abused the purpose of the bankruptcy code." <u>Ciarcia</u>, 578 B.R. at 500 (quoting <u>In re Lin</u>, 499 B.R. 430, 437 (Bankr. S.D.N.Y. 2013); <u>cf.</u> <u>Froman v. Fein (In re Froman)</u>, 566 B.R. 641, 649–50 (S.D.N.Y. 2017) ("The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees and creditors can rely." (quoting <u>In re Edwards</u>, No. 03-10018, 2003 WL 22016324, at *8 (Bankr. D. Vt. Aug. 26, 2002))); <u>see also</u> Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.").

A bankruptcy petition that "contains deficiencies or inaccuracies meant to mislead the court" is evidence of bad faith warranting dismissal. <u>Plagakis v. Gelberg (In re Plagakis)</u>, No. 03 CV 0728 (SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004); <u>see also</u> <u>In re Lin</u>, 499 B.R. 430, 436 (Bankr. S.D.N.Y. 2013) (failing to be forthcoming with the court is "an indication of bad faith conduct and warrants dismissal"); <u>Leavitt v. Soto (In re Leavitt)</u>, 171 F.3d 1219 (9th Cir. 1999) (holding bad faith of dishonest debtor, who failed to disclose assets, warranted dismissal). Accurate and honest disclosure on a bankruptcy petition is of paramount importance because "[s]uccessful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt…. Statements called for in the Schedules…must be regarded as serious business; reckless indifference to the truth…is the equivalent of fraud." <u>Castillo v. Casado (In re Casado)</u>, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) (quoting <u>Diorio v. Kreisler–Borg Constr. Co. (In re Diorio)</u>, 407 F.2d 1330, 1331 (2d Cir. 1969)); <u>see also</u> <u>In re Kelton</u>, 389 B.R. 812, 818 (Bankr. S.D. Ga. 2008) ("Accurate disclosure of a debtor's financial situation is perhaps the primary duty of debtors seeking relief under the Bankruptcy Code.").

In this case, both the quality and materiality of the misstatements make it clear that the Debtor filed and signed his bankruptcy petition, Schedules, and Statements of Financial Affairs with, at a minimum, a reckless indifference to his obligation to file accurate documentation. Cf. Moreo v. Rossi (In re Moreo), 437 B.R. 40, 65 (E.D.N.Y.2010) ("An item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" (quoting Carlucci & Legum v. Murray (In re Murray), 249 B.R. 223, 230 (E.D.N.Y. 2000))). A debtor's failure to disclose, or accurately report, income on a bankruptcy petition is unquestionably material. See U.S. Trustee v. Manno–DeGraw (In re Manno–DeGraw), 2016 WL 3708062, at *3 (Bankr. E.D.N.Y. July 6, 2016) (denying Chapter 7 discharge because the Petition "contained material and demonstrably false statements and omissions, including the failure to disclose" debtor's ownership of a business and true income); see also Agai v. Antoniou (In re Antoniou), 515 B.R. 9, 25 (Bankr. E.D.N.Y. 2014) (denying discharge where "[t]he record is replete with evidence, at a minimum, of the Debtor's reckless disregard for the truth with regard to the omissions and misstatements concerning the…Debtor's income.").

Here, the Debtor misstated his current income on his Schedules and his 2015 and 2016 income on his Statements of Financial Affairs. (Compare Pet. 37, ECF No. 1 (2015 income: $0; 2016 income: $96,000) with Tr. 36:23–38:2 (2015 income: approximately $110,000), and Tr. 48:4–7 (2016 income: $116,000). Moreover, the Debtor's Schedules entirely omit the income of his non-filing spouse. (See Am. Sched. 15.) Even after amendments were filed, several misstatements and omissions remain. (Compare Am. Sched. 15, ECF No. 30 (reducing monthly income from $8,000 to $3,850 and stating spouse in unemployed), with Tr. 44:25 (debtor's spouse has "always been employed"), and Tr. 49:1–5 (monthly income amount of $3,850 is

incorrect.)  Additionally, on his Schedule A/B, the Debtor failed to disclose all cases in which he

is expecting to receive a contingent fee.  Failing to disclose assets is a material omission.  <u>See</u>

<u>Carlucci & Legum v. Murray (In re Murray)</u>, 249 B.R. 223, 230 (E.D.N.Y. 2000).  Furthermore,

"[m]ateriality does not require a showing that the creditors were prejudiced by the false

statement."  <u>Id.</u> at 229.  As one court explained:

> The fact that the Debtor has failed to disclose its interest in property that turns out
> to have little or no value to the estate may be the basis for denying the debtor its
> discharge because "the determination of relevance and importance of the question
> is not for the Debtor to make.  It is the Debtor's role simply to consider the
> question carefully and answer it completely and accurately."

<u>Bank of India v. Sapru (In re Sapru)</u>, 127 B.R. 306, 315 (Bankr. E.D.N.Y. 1991) (quoting

<u>Guardian Indus. Prods., Inc. v. Diodati (In re Diodati)</u>, 9 B.R. 804, 808 (Bankr. D. Mass. 1981)).

Misstatements and omissions are contained in multiple documents filed by the Debtor

during the course of this case.  <u>See</u> <u>Virovlyanskiy v. Virovlyanskiy (In re Virovlyanskiy)</u>, 485

B.R. 268, 274 (Bankr. E.D.N.Y. 2013), <u>aff'd</u>, No. 13 CV 1511 RJD, 2014 WL 1800411

(E.D.N.Y. May 6, 2014) ("A court may infer fraudulent intent from multiple omissions or

misstatements in a debtor's petition, schedules, and statements." (citing <u>Diorio v. Kreisler–Borg</u>

<u>Constr. Co. (In re Diorio)</u>, 407 F.2d 1330, 1331 (2d Cir. 1969))).  This conduct evinces an

"obvious pattern of deceit which flies in the face of the true purpose of the Bankruptcy Code."

<u>Painewebber Inc. v. Gollomp (In re Gollomp)</u>, 198 B.R. 433, 438 (S.D.N.Y. 1996) (quoting

<u>Castillo v. Casado (In re Casado)</u>, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995)).  The Debtor's

omissions and misstatements continued throughout this case.  His conduct in omitting material

information from his Schedules and Statements of Financial Affairs is consistent with his failure

to disclose financial information pursuant to the 2004 Order and November 6 Order.  The

Debtor's blatant disregard for his obligations to file accurate bankruptcy schedules is ample

cause to dismiss this case.[5]  See In re Eatman, 182 B.R. 386, 393 (Bankr. S.D.N.Y. 1995)

(finding bad faith where "the petition and schedules are riddled with material misstatements,

inconsistencies and omissions."); see also Lin, 499 B.R. at 437 (dismissing Chapter 13 case for

lack of good faith where debtor misrepresented assets and sources of income).

     The conduct of the Debtor, who is a lawyer, is all the more egregious in light of his

efforts to blame his attorney for his failure to comply with these obligations.  The Debtor's

Schedules were electronically signed and submitted under penalty of perjury.  The Debtor had a

duty to read the documents before submitting them.  See Gobindram v. Bank of India, 538 B.R.

629, 641 (E.D.N.Y. 2015) (holding that an advice of counsel defense must fail in situations

where "a debtor fails to review the petition and supporting schedules prepared by his attorney…it

is the debtor's obvious duty to read the entire petition (no matter who prepared it) before signing

and swearing to its accuracy"); Darwin (Huck) Spaulding Living Trust v. Carl (In re Carl), 517

B.R. 53, 70 (Bankr. N.D.N.Y. 2014) ("[R]eliance [on counsel] must be in good faith."); Boroff v.

Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987) ("A debtor cannot, merely by playing

ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements

which he has made under oath."); In re Bello, 528 B.R. 562, 568 (Bankr. E.D.N.Y. 2015)

("[C]lients must be held accountable for the acts and omissions of their attorneys." (quoting

---

[5] In a post-trial submission, the Debtor's attorney asserted that the misstatements concerning the Debtor's 2015 and 2016 income had been corrected by an amended Statement of Financial Affairs filed on April 13, 2017, which listed his income for 2016 as $45,296, and for 2015 as $43,478, which, according to his counsel, was the Debtor's net income, as reflected on his tax returns, and that the Debtor's spouse in fact had no earnings after 2016.  This submission was filed after trial, was not authorized by the Court, includes no statement under penalty of perjury by the Debtor, and conflicts materially with the Debtor's testimony.  By Order entered February 11, 2019, after a hearing, thirteen paragraphs contained in the post-trial submission by Debtor's attorney, in addition to other documents, were stricken from the record and sealed pursuant to §§ 105 and 107(b)(2), which authorizes such relief to protect a person from "scandalous or defamatory material contained in a paper filed under this title."  11 U.S.C. § 107(b)(2).  (Order to Show Cause, ECF No. 115; Redacted Aff. in further Opp'n, ECF No. 116.)  Even if the non-stricken portions of the post-trial submission were to be considered, the outcome on this motion would not change, given the Debtor's failure to comply with his disclosure obligations under the Discovery Orders and his bad faith conduct in this case.

Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship, 507 U.S. 380, 396 (1993).)); see also Stamat v. Neary, 635 F.3d 974, 982 (7th Cir. 2011) ("Given the Stamats' level of education and business experience, their failure to disclose the required past business interests, property transfers, and income…shows a reckless disregard sufficient for the bankruptcy court's finding of [fraudulent] intent."); Weiss v. Winkler, No. 98-CV-5742 FB, 2001 WL 423050, at *1 (E.D.N.Y. Mar. 30, 2001) ("These repeated material omissions, made by a sophisticated businessperson, represent a pattern of falsehoods more than sufficient to support the conclusion that Weiss acted with fraudulent intent.").  The Debtor's attempt to escape responsibility for the material misstatements and omissions in his Schedules and Statements of Financial Affairs by blaming his lawyer must be rejected.

2.  *Two-Party Dispute*

Dismissal is also warranted because the Debtor's bankruptcy case "essentially involves a two-party dispute." In re Lin, 499 B.R. 430, 437 (Bankr. S.D.N.Y. 2013) (citations omitted); see also C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship), 113 F.3d 1304 (2d Cir. 1997) (holding that "[f]or…two-party disputes, the state court, which has been overseeing the case is a preferable forum.").  Dismissing a case for "[c]ause is a fact-specific inquiry as to which a variety of factors may be relevant, including the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests." Wilk Auslander LLP v. Murray (In re Murray), 900 F.3d 53, 60 (2d Cir. 2018).  For example, timing a Chapter 13 petition to delay or thwart state court litigation may show that the filer is engaging in litigation tactics and forum shopping, and that the case is not a good-faith effort to reorganize. See Angelo v. Touch Worldwide Holdings Ltd. (In re Angelo), 580 B.R. 862 (W.D. Wash. 2017) (affirming the bankruptcy court's decision to dismiss a Chapter 13 petition filed on the eve of a deposition),

appeal docketed, No. 17-35990 (9th Cir. Dec. 11, 2017); In re Fonke, 310 B.R. 809, 816 (Bankr. S.D. Tex. 2004) (converting Chapter 13 case to a Chapter 7 case for cause, due to bad faith, where "the…Debtor's bankruptcy was motivated solely by the two-party dispute with [the creditor], and was essentially an attempt to thwart [the creditor] in the State Court Litigation and to engage in forum shopping,"); In re Herndon, 218 B.R. 821, 825 (Bankr. E.D. VA. 1997) (dismissing Chapter 13 case for cause after finding bad faith where the case was essentially a two-party dispute and where the debtor filed the case on the eve of a state court lawsuit which was brought by the only genuine creditor); In re HBA East, Inc., 87 B.R. 248, 259–60 (Bankr. E.D.N.Y. 1988) ("As a general rule where, as here, the timing of the filing…is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

Other than Glassman's disputed claim, the claims register reflects total claims aggregating approximately $32,000, including the $20,000 claim filed by the Debtor on behalf of his sister. The Debtor also has mortgage arrears in the amount of $1,872.52. However, the Debtor had at least $60,000 in nonexempt cash available when he commenced this case, which was more than sufficient to pay these few creditors. It is clear that this case was filed solely to stay the determination of Glassman's disputed claim.

3.  *Bad Faith Conduct in this Case*

Finally, dismissal is warranted because the Debtor did not conduct himself in good faith during the course of this case. The Debtor repeatedly disobeyed this Court's orders by failing to provide Glassman with documents called for by the Subpoena issued in connection with the Rule 2004 examination. For example, the Subpoena directed the Debtor to produce PayPal statements (Tr. at 19–20), and to produce all credit card statements from January 2013 to the present.

16

(Sanctions Mot. Ex. B, ECF No. 60-2; Tr. 31–32.)  The Debtor, however, believed he had the discretion to decide whether or not to produce the PayPal statements, stating:

> "I did not [provide them], because all my PayPal transactions were contained and paid through Citibank, and it clearly states PayPal every time the three dollars or five dollars that PayPal would use or the hundred dollars, clearly on each Citibank. And I felt and still believe that that constitutes a clear statement of every time I use PayPal and every time I use Venmo for three dollars, five dollars, for a hundred dollars."

(Tr. 21:4–11.)  On cross-examination, the Debtor admitted that payments made to his PayPal account were not necessarily reflected in his Citibank account; that he had received payments from clients in his PayPal account; that PayPal could be used in effect as a bank account; and that he could easily have obtained the transaction history as required by the Subpoena.  (See Tr. 22:2–24:8.)  The Debtor also failed to comply with the provisions of the November 6 Order requiring the Debtor to provide a statement signed under penalty of perjury affirming that the Debtor turned over all responsive documents within his possession, custody, and control.  (See Tr. 19:5–18.)  Here, again, the Debtor attempted to blame his counsel for his failure to comply. (See Tr. 19:17 ("I signed what my lawyer asked me to sign.").)

Failure to comply with a discovery order is grounds for dismissal pursuant Bankruptcy Rule 7037.  Fed. R. Bankr. P. 7037 ("Bankruptcy Rule[s]").  Moreover, the Debtor's cavalier and dismissive attitude toward his obligations shows that he did not participate in this case in good faith, and are further grounds for dismissal.

## B.  Dismissal with Prejudice

Glassman seeks dismissal of this case with prejudice to re-filing for one year pursuant to § 105(a), which he argues is appropriate given the Debtor's bad faith in filing this case, in failing to file accurate schedules, and failure to comply with his discovery obligations.  (Suppl. Mem. in

Supp. 11–13, Adv. Pro. No. 17-01050-CEC, ECF No. 22.)  The Debtor asserts that no bad faith

has been shown.  (Aff. in Opp'n ¶ 10, ECF No. 64).

"It is well-established that courts have discretion to bar re-filing of a bankruptcy action

for periods of a year or longer…."  Wenegieme v. Macco, 580 B.R. 17, 24 (E.D.N.Y. 2018)

(citing Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 339 (2d Cir. 1999)).

"Where…there is sufficient cause, the imposition of prejudice under the authority of Section

105(a) and Section 349(a) is necessary to prevent the abuse of a Chapter 13 case."  In re Ciarcia,

578 B.R. 495, 504 (Bankr. D. Conn. 2017).  A finding of bad faith can justify dismissal with

prejudice.  See Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999); In re

Tornheim, 239 B.R. 677, 687 (Bankr. E.D.N.Y. 1999) ("Given the Debtor's gross abuse of the

bankruptcy process, including his bad faith filing and maintenance of the bankruptcy case,

dubious testimony given under oath, and continuing lack of compliance with orders of this Court,

the dismissal is with prejudice to refiling."); In re Felberman, 196 B.R. 678, 683 (Bankr.

S.D.N.Y. 1995) (holding "long as the dismissing court finds "cause," a bankruptcy action may be

dismissed with prejudice to the re-filing of a subsequent petition.").

Here, the Debtor's conduct in connection with this bankruptcy case was abusive.  It is

clear that the Debtor filed this bankruptcy case to obtain a stay of the upcoming trial in New

York County Supreme Court on Glassman's underlying claim.  The Debtor, an attorney, stated

under penalty of perjury that he provided true and correct information in his Schedules and

Statements of Financial Affairs; however, he misstated and omitted numerous material facts in

those filings.  He failed to produce financial records as required by the 2004 Order and the

November 6 Order.  He repeatedly attempted to excuse his conduct by blaming his attorney.

This attempt to shift blame for his conduct reflects bad faith, and is contradicted by his

18

testimony.  (E.g., Tr. 19:5–11 (Debtor admits that he decided not to provide the requested PayPal

and Venmo statements because he believed his Citibank statements would be sufficient.).)

Based upon the ample record of the Debtor's bad faith, dismissal of this case with

prejudice to re-filing under Title 11 for one year is appropriate.


## C.  <u>Sanctions</u>

Glassman seeks sanctions, pursuant to the Court's inherent powers and Bankruptcy Rule

7037.[6]  Glassman contends that the Debtor's willful and contemptuous failure to comply with the

2004 Order and the November 6 Order, and the Debtor's overall bad faith and misconduct in this

case, warrant sanctions in the form of: (i) dismissing the Debtor's bankruptcy case with prejudice

or striking the Debtor's answer in the adversary proceeding; (ii) holding the Debtor in civil

contempt; and (iii) ordering reimbursement of Glassman's legal fees and litigation costs.

Glassman further requests that the Court sanction the Debtor pursuant to 28 U.S.C § 1927.

(Sanctions Mot. 25–29, 30–34, ECF No. 60; Suppl. Mem. in Supp. 14–17, Adv. Pro. No. 17-

01050-CEC, ECF No. 22.)  Glassman seeks $61,841 in legal fees and expenses.  This amount

reflects invoices dated prior to Glassman's counsel's appearance in this case.  (Suppl. Mem. in

Supp. Ex. D ("Invoices"), Adv. Pro. No. 17-01050-CEC, ECF No. 22-4.)

Sanctions are an important tool which, in the appropriate situation, may discourage

frivolous conduct in litigation and compensate the movant for losses.  See <u>Local 28 Sheet Metal

Workers' Int'l Ass'n v. EEOC</u>, 478 U.S. 421, 443 (1986); <u>In re Chief Exec. Officers Clubs, Inc.</u>,

359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) (citing <u>N.Y. State Nat'l Org. for Women v. Terry</u>, 159

F.3d 86, 93 (2d Cir. 1998).  The power to sanction is "a necessary and integral part of the

---

[6] Federal Rule of Civil Procedure 37 is applicable here pursuant to Federal Rule of Bankruptcy Procedure 9037.

independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." United States v. Rangolan, 464 F.3d 321, 324 (2d Cir. 2006) (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)).

Pursuant to their inherent authority, "Federal Courts have broad discretion to fashion remedies as equity requires, to ensure compliance with their orders." Cordius Tr. v. Kummerfeld Assocs., Inc., 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009). Because of their very potency, inherent powers must be exercised with restraint and discretion. See Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764, (1980). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991).

*1. Discovery Orders*

"[C]ompliance with discovery orders…is necessary to the integrity of our judicial process…[and] part[ies] who flout[ ] such orders do so at [their] peril." Pergament v. Thilman (In re Thilman), 548 B.R. 1, 8 (Bankr. E.D.N.Y. 2016) (quoting Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir. 1988)). In general, noncompliance with discovery may be sanctioned under Federal Rule of Civil Procedure 37. Additionally, a bankruptcy court may impose sanctions "pursuant to its inherent equitable powers, which are available to address…bad-faith conduct" and failure to comply with a court order. Pereira v. Felzenberg, No. 96 CIV. 7957 (RWS), 1997 WL 698186, at *6 (S.D.N.Y. Nov. 7, 1997) (citing Chambers, 501 U.S. at 50). However, even when imposing sanctions pursuant to its inherent powers, "a bankruptcy court may look to [Fed. R. Civ. P.] 37 as a guide to determine the proper level of response to the contemnor's offense." Nicole Energy Mktg., Inc. v. McClatchey (In re Nicole

Energy Servs., Inc.), 356 B.R. 786, n.1 (B.A.P. 6th Cir. 2007) (citing Pereira, 1997 WL 698186, at *6).

"Rule 37 provides somewhat different remedies for discovery violations depending on whether those violations occur due to a party's failure to respond to discovery requests, in the context of an order granting or denying a discovery motion, or when a party disobeys a discovery order." Nukote Int'l, Inc. v. Office Depot, Inc., 2015 WL 71566, at *8–10 (S.D. Fla. Jan. 6, 2015).

In this case, sanctions are available under Rule 37(b) of the Federal Rules of Civil Procedure. Rule 37(b)(2)(A) provides for sanctions where "a party…fails to obey an order to provide or permit discovery, including an order under Rule…37(a)." Fed. R. Civ. P. 37(b)(2)(A). Thus, a court may impose sanctions under Rule 37(b)(2)(C) whether or not a prior order was issued pursuant to Rule 37(a). See Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) ("The language of Rule 37(b)(2) requires a prior order…but does not by its terms specifically require an order issued pursuant to Rule 37(a). Consequently, a Rule 37(a) order is merely one of the orders that can trigger sanctions under Rule 37(b)(2).") (citations omitted).

Pursuant to Rule 37(b)(2)(C), instead of or in addition to the sanctions described in Rule 37(b)(2)(A), which include dismissal, the court "**must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, **caused by the failure**." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Sanctions for the Debtor's failure to comply with the 2004 Order and the November 6 Order (the "Discovery Orders") are appropriate under both Rule 37(b) and the Court's inherent powers. See Greene v. Bryan, No. 15-CV-249 (ARR)(RER), 2019 WL 181528, at *3 (E.D.N.Y.

Jan. 14, 2019) ("'[A] court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs' or under Federal Rule of Civil Procedure 37, which governs the discovery process." (quoting <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 106–07 (2d Cir. 2002))).  However, Glassman seeks to have the entirety of his legal fees incurred from May 10, 2017 through June 15, 2018 reimbursed.  (<u>See</u> Invoices, Adv. Pro. No. 17-01050-CEC, ECF No. 22-4.)   Invoking the Court's inherent authority to direct the Debtor to pay Glassman $61,841, is neither a reasonable nor an appropriate sanction for the Debtor's conduct in failing to comply with the Discovery Orders.  Under Rule 37 or through the court's inherent powers, "a court imposing litigation costs…will calculate the amount based on costs related to specific bad faith acts, or directly resulting from those acts."  <u>Pereira</u>, 1997 WL 698186, at *6; <u>see also</u> <u>Pereira v. Dieffenbacher (In re Dieffenbacher)</u>, 556 B.R. 79, 85 (Bankr. E.D.N.Y. 2016) (awarding "an amount equal to the reasonable attorney's fees and costs incurred as a result of [the] contempt").

The Debtor's refusal to comply with his disclosure obligations did not cause all of Glassman's legal expenses and fees in this case.  By So-Ordered Stipulation, dated August 11, 2017, the Debtor's deadline to produce documents as required by the 2004 Order was September 15, 2017.  (Sched. Order, ECF No. 47.)  As such, September 16, 2017 is the earliest date at which the Debtor could have failed to comply with the 2004 Order.  On October 10, 2017, Glassman informed the Court that the Debtor failed to comply with the 2004 Order (the "Oct. 10, 2017 Letter").  (<u>See</u> Oct. 10, 2017 Ltr., ECF No. 50).  This letter represents the first expense "caused by" the Debtor's failure to comply with his discovery obligations.  Yet, Glassman seeks fees dating back to May 10, 2017.  (<u>See</u> Invoices 2, Adv. Pro. No. 17-01050-CEC, ECF No. 22-4.)  Any expenses or fees incurred prior to October 10, 2017 were not caused by the Debtor's

failure to comply with his discovery obligations and, therefore, are not compensable. See In re Bello, 528 B.R. 562, 569 (Bankr. E.D.N.Y. 2015).

The Oct. 10, 2017 Letter resulted in the November 6 Order. From November 6, 2017 to January 27, 2018, the date the parties sought to extend of the deadlines set by the November 6 Order, the invoices submitted by Glassman show multiple entries for fees that would have been incurred irrespective of the Debtor's failure to comply with discovery. Included in these invoices, for example, are legal charges for a "[r]eview of supplemental document production" and for preparation "for deposition of Robert Feldman." (See Invoices, Adv. Pro. No. 17-01050-CEC, ECF No. 22-4.) Had the debtor complied with discovery in the first instance, these fees would have nonetheless been incurred by Glassman, and such Glassman's fee request must be reduced accordingly. See Selby v. Arms, No. 93 CIV. 6481 (DLC), 1995 WL 753894 (S.D.N.Y. Dec. 20, 1995)1995 WL 753894 at *9 (imposing costs related to applications to obtain compliance with court orders, but not costs associated with summary judgment motion or discovery).

Further, additional sanctions, beyond reimbursement for Glassman's attorney's fees incurred as a result of the Debtor's failure to comply with the Discovery Orders, are not warranted as dismissal of the Debtor's bankruptcy case with prejudice is a severe sanction. Using Rule 37 as a guidepost, and because Rule 37(b)(2)(C) provides that the court must order reasonable expenses, "unless the failure was substantially justified or other circumstances make an award of expenses unjust," courts in this district consider the severity of a sanction, such as dismissal, as an "other circumstance[]," mitigating against an additional sanction of costs and fees. See Thilman, 548 B.R. at 12 ("Under the[ ] circumstances and in light of the severe sanction imposed, the Court finds that an award of expenses [is] unjust."); Passe v. City of New

York, No. CV 02–6494(ERK)(MDG), 2009 WL 290464, at *16 (E.D.N.Y. Jan. 5, 2009)

subsequently aff'd sub nom. Passe v. New York City Dep't of Corr., 377 F. App'x 106 (2d Cir.

2010) (recommending dismissal of the action under Rule 37 and declining to recommend

defendant's request for costs associated with two depositions at which plaintiff failed to appear

because dismissal was already a severe sanction); Samonte v. Wanat, No. 13–CV–226 (MKB),

2014 WL 1817605, at *7–8 (E.D.N.Y. May 6, 2014) (declining to grant defendant's request for

further "unspecified sanctions as the Court deems appropriate" where the court dismissed the

action under Federal Rules of Civil Procedure 41(b) and 37(b)(2)(A), explaining that additional

sanctions were unnecessary because dismissal was a sufficiently harsh remedy).

The Court does not condone the Debtor's attitude and conduct in this case, and the

decision to dismiss this case with prejudice is, in substantial part, based upon the Debtor's failure

to comply with the Discovery Orders.  Moreover, the parties did not hold a second deposition,

and the Sanctions Motion was heard in conjunction with Glassman's motion to dismiss.  The

Debtor's failure to comply with the Discovery Orders did not cause all of the fees for which

Glassman seeks reimbursement.

Accordingly, the expenses caused by the Debtor's failure to comply with the Discovery

Orders are appropriately quantified as the attorney's fees incurred drafting the Oct. 10, 2017

Letter, seeking modification of the November 6 Order, and in prosecuting the Sanctions Motion.

Review of the invoices submitted, together with the Sanctions Motion, leads to the conclusion

that the fees incurred as a result of the Debtor's failure to comply with the Discovery Orders,

including prosecuting the Sanctions Motion, are reasonable.  The invoices indicate that

approximately thirty-five hours were billed, and $100 for Westlaw legal research.  (Invoices

5–15, Adv. Pro. No. 17-01050-CEC, ECF No. 22-4.)  Five hours and thirty minutes are

attributed to paralegal services at a rate of $165.00 per hour, and thirty hours and twenty-six

minutes to legal services at a rate of $495.00.  (Id.)  That sum equals $15,953.20.  (Id.)  This

amount is imposed as a sanction on the Debtor under Bankruptcy Rule 7037 and the Court's

inherent power.

   2.  *Local Bankruptcy Rule 7007-1*

   The Debtor argues that Glassman failed to comply with E.D.N.Y. Local Bankruptcy Rule

7007-1, which requires that a discovery motion made under Bankruptcy Rules 7026 through

7037 be supported by an affidavit or affirmation certifying that the moving party has made a

good faith effort to confer with the opposing party to resolve the issues raised by the motion

without judicial intervention.  E.D.N.Y. LBR 7007-1.  For this reason, the Debtor argues, there is

no basis to grant relief.  (Aff. in Opp'n ¶ 19, ECF No. 64).  However, LBR 7007-1 addresses a

"discovery motion," and the sanctions imposed on the Debtor here result from his failure to

comply with the Discovery Orders.  See Daval Steel, 951 F.2d at 1363 ("Provided that there is a

clearly articulated order of the court requiring specified discovery, the district court has the

authority to impose Rule 37(b) sanctions for noncompliance with that order.").  Because the

sanctions here result from the Debtor's failure to comply with court orders, compliance with

LBR 7007-1 is not a prerequisite to the imposition of sanctions.  See McCullough v. World

Wresting Entm't, Inc., No. 3:15-CV-00425 (VLB), 2018 WL 4697285, at *4 (D. Conn. July 22,

2018) ("While Rule 37(a) requires that the parties confer in good faith in attempt to resolve their

discovery dispute prior to filing a motion to compel, Rule 37(b) contains no such requirement.

This is undoubtedly because such negotiations will already have taken place prior to the filing of

a motion to compel, and because a failure to comply with an order compelling discovery is not

only a serious breach of an obligation to the opposing party; it is a serious breach of an

obligation to the Court and to the judicial process.").

   3.   *28 U.S.C § 1927*

   Finally, Glassman seeks sanctions pursuant to 28 U.S.C § 1927, which provides that,

   "any attorney or other person admitted to conduct cases in any court of the
   United States or any territory thereof who so multiplies the proceedings in any
   case unreasonably and vexatious may be required by the court to satisfy
   personally the excess costs, expenses, and attorneys' fees reasonably incurred
   because of such conduct."

28 U.S.C § 1927.  Glassman argues that because the Debtor is an attorney admitted to the New

York State Bar, and admitted to practice in the Eastern District of New York, he is subject to §

1927.

   "Though § 1927 provides no basis to sanction a non-attorney pro se litigant, the statute

does permit the imposition of sanctions on licensed attorneys who choose to proceed pro se."

Burton v. Krohn (In re Swift), No. 94-10285-CEC, 2016 WL 355515, at *9 (Bankr. E.D.N.Y.

Jan. 28, 2016) (citing Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992)).  This, however, is not

such a case.  While the Debtor is a licensed attorney, he did not appear pro se in this case or in

the adversary proceeding.

   "[T]he statute is designed to discipline counsel only and does not authorize imposition of

sanctions on the attorney's client."  Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103

F.3d 294, 297 (3d Cir. 1996).  Glassman has not cited to any authority to support his claim that a

debtor who is an admitted attorney, but is not proceeding pro se, is subject to sanctions under 28

U.S.C. § 1927.  To the contrary, courts have held that "[e]ven though a party is a

licensed attorney, as is Plaintiff, he can incur no liability under section 1927 when

he is represented by counsel."  McKool v. Travelers Indem. Co., No. 3:09-CV-1435-L, 2009 WL

3914769, at *1 (N.D. Tex. Nov. 18, 2009).  "[W]hether there is evidence of bad faith, improper motive, or reckless indifference to the court [as to the Debtor] is beside the point."  Id.  In short, a party represented by counsel, even if the party is an attorney, is not subject to sanctions under 28 U.S.C. § 1927.

<u>CONCLUSION</u>

For the reasons set forth above, the motion to dismiss is granted, and this case is dismissed with prejudice to refile under Title 11 for a period of one year without prior leave of the Court, granted upon motion on notice to Glassman filed in this case.  The sanctions motion is granted in part, as set forth above.  A separate order will be issued.

**Dated: Brooklyn, New York**
       **February 26, 2019**

                         **Carla E. Craig**
                 **United States Bankruptcy Judge**